**Nos. 2013-152**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE ICM INC.,

*Petitioner,*

On Petition for a Writ of Mandamus to the United States
District Court for the Southern District of Indiana,
Indianapolis Division in
Case No. 1:10-ml-02181-LJM-DML
Related Case No. 1:10-ml-08000-LJM-DML
Judge Larry J. McKinney

## PRINCIPAL BRIEF FOR RESPONDENTS GS CLEANTECH CORPORATION AND GREENSHIFT CORPORATION

Michael J. Rye
Charles F. O'Brien
Chad A. Dever
CANTOR COLBURN LLP
20 Church Street
Hartford, CT 06103
(860) 286-2929


*Counsel for GS CLEANTECH CORPORATION
and GREENSHIFT CORPORATION*

June 13, 2013

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 26.1, 28(a)(1) and 47.4, counsel for GS CleanTech Corporation and GreenShift Corporation certifies the following:

1. The full names of every party represented by me are: GS CleanTech Corporation and GreenShift Corporation.

2. The name of the real party in interest is: *None*

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are as follows:

   *GS CleanTech Corporation is a wholly-owned subsidiary of GreenShift Corporation.*

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the district court or are expected to appear in this Court are:

   Michael J. Rye
   Charles F. O'Brien
   Chad A. Dever
   Cantor Colburn LLP
   20 Church Street
   Hartford, CT 06103
   (860) 286-2929

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ....................................................................3

STATEMENT OF JURISDICTION........................................................................3

STATEMENT OF THE CASE................................................................................3

STATEMENT OF THE ISSUES.............................................................................4

STATEMENT OF FACTS .......................................................................................4

    A.    The '858 Patent and Its Technology .....................................................4

    B.    District Court Proceedings .................................................................5

SUMMARY OF THE ARGUMENT ......................................................................7

STANDARD OF REVIEW .....................................................................................9

ARGUMENT ...........................................................................................................9

    A.    ICM cannot show that a writ of mandamus is the only available
        relief ...................................................................................................11

    B.    ICM has waived its arguments by failng to raise them below............12

    C.    ICM does not have a clear and indisputable right to the writ .............13

    D.    The issue is not ripe..........................................................................15

CONCLUSION ......................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33, 35 (1980)............................................................................9

*DRG Funding Corp. v. Secretary of Housing and Urban Development*,
  76 F.3d 1212, 1216 (D.C. Cir. 1996) ............................................ 11, 12

*In re Calmar, Inc.*,
  854 F.2d 461, 464 (Fed. Cir. 1988) .......................................................9

*In re Cordis Corp.*,
  769 F.2d 733, 737 (Fed. Cir. 1985) .....................................................15

*In re EMC Corp.*,
  677 F.3d 1351, 1354 (Fed. Cir. 2012) ..............................................9, 14

*In re Princo Corp.*,
  478 F.3d 1345, 1351 (Fed. Cir. 2007) ...................................................9

*In re Regents of University of California*,
  964 F.2d 1128, 1135 (Fed. Cir. 1992) .................................................15

*In re Whelan*,
  No. 97-5155, 1997 WL 404937, *1 (D.C. Cir. July 17, 1997)............11

*Ladd v. U.S.*,
  713 F.3d 648, 655 (Fed. Cir. 2013) .....................................................12

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1988)........................................................................8, 13

*Mallard v. U.S. Dist. Court*,
  5490 U.S. 296, 309 (1989)......................................................................9

**Statutes**

28 U.S.C. § 1295(a)(1)................................................................................3

28 U.S.C. § 1331 .........................................................................................3

28 U.S.C. § 1338(a) .....................................................................................3

28 U.S.C. § 1404(a) ...................................................................................13

28 U.S.C. § 1406(a) ...................................................................................10

28 U.S.C. § 1651 .........................................................................................3

35 U.S.C. § 154(d) ....................................................................................5, 6

## STATEMENT OF RELATED CASES

No other appeal or petition in or from the same civil action in the district court has been previously before this or any other appellate court. This case is related to In Re: Method Of Processing Ethanol Byproducts And Related Subsystems ('858) Patent Litigation, Case No. 1:10-ml-02181-LJM-DML; Related Case No. 1:10-ml-08000-LJM-DML in the United States District Court for the Southern District of Indiana.

## STATEMENT OF JURISDICTION

The jurisdiction of the district court over this action is based upon 28 U.S.C. §§ 1331, 1338(a). This Court has jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651, and 28 U.S.C. § 1295(a)(1) because the underlying case is a patent case.

## STATEMENT OF THE CASE

This case was originally filed by petitioner ICM, Inc. in the United States District Court for the District of Kansas as ICM, Inc. v. GS CleanTech Corporation and GreenShift Corporation, Civ. No. 09-cv-01315-WEB-KMH ("the Kansas action"). The case was consolidated in a multi-district litigation In Re: Method Of Processing Ethanol Byproducts And Related Subsystems ('858) Patent Litigation, Case No. 1:10-ml-02181-LJM-DML; Related Case No. 1:10-ml-08000-LJM-DML in the United States District Court for the Southern District of Indiana.

Respondents moved to dismiss ICM's Complaint. The MDL transferee court granted-in-part and denied-in-part Respondents' Motion to Dismiss. The instant petition arises from the MDL Court's order.

## STATEMENT OF THE ISSUES

Is Petitioner ICM, Inc. entitled to the extraordinary request for a writ of mandamus to vacate in part the February 27, 2013 order (Master Dkt. No. 793) of the MDL transferee court, the United States District Court for the Southern District of Indiana?

## STATEMENT OF FACTS

### A.    The '858 Patent and Its Technology

Employees of GS CleanTech Corporation ("GS CleanTech"), which is a wholly-owned subsidiary of GreenShift Corporation ("GreenShift" and collectively with GS CleanTech, "CleanTech"), have invented and recently patented novel methods to extract corn oil from the by-products formed during ethanol production. These novel inventive methods are claimed in, *inter alia*, United States Patent No. 7,601,858, entitled "Method Of Processing Ethanol Byproducts And Related Subsystems," and issued on October 13, 2009 (the "'858 patent"); United States Patent Nos. 8,008,516 and 8,008,517, both entitled "Method Of Processing Ethanol Byproducts And Related Subsystems," and issued on August 30, 2011 (the "'516 patent" and " '517 patent"); and United States Patent No. 8,283,484, entitled "Method Of Processing Ethanol Byproducts And Related

4

Subsystems," and issued on October 9, 2012 (the " '484 patent") (collectively "the patents in suit").

After publication of a then pending patent application, pursuant to 35 U.S.C. § 154(d), GreenShift sent letters to third parties, some of which were coincidentally ICM's customers. The letters placed each third party on actual notice of GS CleanTech's patent applications; that in GreenShift's opinion, the processes employed by each third party falls within the scope of the published claims; that each third party should carefully consider the published applications in its immediate and future business plans; and that GreenShift is willing to resolve the matter in a mutually beneficial manner.

## B.    District Court Proceedings

In an apparent attempt to appease its customers and to ensure jurisdiction in a patent infringement case, ICM filed the Kansas action against the Defendants: (1) alleging that GreenShift's statements about GS CleanTech's patent applications constitute unfair methods of competition under the Lanham Act and interference with ICM's existing and prospective business and contractual relationships (including possibly allegations of unfair and deceptive acts and practices under the Kansas Consumer Protection Act ("KCPA")); and (2) seeking declaratory judgments of non-infringement, invalidity and unenforceability of the patents-in-suit.

5

ICM filed its initial Complaint For Declaratory Judgment on October 13, 2009, which is the same day the '858 patent issued, the same day that GS CleanTech filed a complaint for patent infringement against GEA Westfalia Separator, Inc. ("Westfalia") and DOES 1 – 20 inclusive in the Southern District of New York ("NY Patent Infringement Case")[1], and the same day that Westfalia amended its previously filed complaint against GreenShift to add claims for declaratory judgment of non-infringement and invalidity of the patents-in-suit in the Southern District of New York ("NY Declaratory Judgment Case").[2]  One of Westfalia's customers, Ace Ethanol, LLC ("Ace Ethanol"), who received letters from GreenShift, also joined in Westfalia's First Amended Complaint as party-plaintiff in New York.

On September 1, 2010, the NY Patent Infringement and Declaratory Judgment Cases and the Kansas action were consolidated with a number of other patent infringement lawsuits in a multi-district litigation at the Southern District of Indiana for pre-trial proceedings ("MDL Court").  ICM amended its complaint four

---

[1]  The NY Patent Infringement Case is pending in the MDL Action as Civil Action Number 1:10-cv-08007-LJM-DML.

[2]  Westfalia's original complaint against GreenShift was filed on September 3, 2009, alleges that GreenShift violated the Lanham Act and New York state statutes for false advertising, and common law unfair competition for GreenShift's statements made in letter to Westfalia's customers regarding the patent applications pursuant to 35 U.S.C. § 154(d), and is pending in the MDL Action as Civil Action Number 1:10-CV-08006-LJM-DML.

times during the course of the MDL proceedings, and CleanTech responded to three[3] of them with a motion to dismiss

On July 30, 2012, ICM filed its Fifth Amended Complaint For Declaratory Judgment (Master Dkt. No. 421) against the Defendants, which additionally seeks under Count II, a declaration that the patents-in-suit are unenforceable.  CleanTech responded with a motion to dismiss on August 15, 2012 (Master Dkt. No. 431)  On February 27, 2013, the MDL Court decided CleanTech's motion to dismiss:

> The Court concludes that ICM Inc.'s claims in Count I under Kansas state law should be dismissed with prejudice; however, its claim under the Lanham Act may proceed. Further, ICM Inc.'s declaratory judgment claims in Count II are properly pled and the transferor court will retain jurisdiction over them on remand; however, it is in the interests of justice to transfer this proceeding to the Southern District of New York after the Multidistrict Litigation proceedings.

*See* Order on CleanTech's Motion to Dismiss ICM's Fifth Amended Complaint, filed February 27, 2013 in MDL Case 1:10-ml-02181-LJM-DML (Master Dkt. No. 793) at p. 20 (attached to the Petition as No. 1).

## SUMMARY OF THE ARGUMENT

ICM is not entitled to the extraordinary remedy of a writ of mandamus to vacate the MDL Court's comments regarding the suitability of a transfer of venue. A writ of mandamus is only used for extraordinary situations "to correct a clear

---

[3] ICM filed its Fourth Amended Complaint before CleanTech responded to the Third Amended Complaint.

abuse of discretion or usurpation of judicial power." To succeed, ICM must prove that (1) it has no other means of obtaining the relief desired and (2) that the right to issuance of the writ is "clear and indisputable."

ICM has fallen far short of making this substantial showing for several reasons. First, mandamus is not the only relief available to ICM. For example, ICM could have filed a motion for reconsideration with the MDL Court. In addition, ICM could later file a motion in the Kansas and/or NY courts (or even the MDL Panel) at the time of transfer to oppose the transfer. ICM's petition for a writ of mandamus should be denied for this reason alone.

Second, ICM failed to raise the arguments presented in its petition with the MDL Court despite multiple opportunities to do so. It is well-established that arguments not made below are waived at the appellate level. Third, ICM does not have a clear and indisputable right to the writ. ICM overstates the holding of *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1988). Contrary to ICM's arguments, the MDL transferee court was not precluded from ruling on the motion to transfer under *Lexecon*. Further, there are substantial reasons why the Kansas action should be transferred to the Southern District of New York.

Finally, ICM's petition for a writ of mandamus simply is not ripe because the case is not ready for transfer at this time and will not be for at least several

months or more (if ever).  Accordingly, ICM is not entitled to a writ of mandamus in this case.

## STANDARD OF REVIEW

The remedy of mandamus is available in extraordinary situations "to correct a clear abuse of discretion or usurpation of judicial power."  *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988).  A party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, *see Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable," *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) (per curiam).

The Federal Circuit has exclusive jurisdiction over writs of mandamus in patent cases.  *In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007).  The Federal Circuit applies its own law regarding substantive patent matters and the law of the regional circuit (here the Seventh Circuit) for procedural matters. "[T]ransfer motions are governed by regional circuit law."  *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) (while joinder and motions to sever are governed by Federal Circuit law).

## ARGUMENT

Petitioner ICM has burdened this Court with a request to vacate-in-part a portion of the MDL court's opinion granting-in-part and denying-in-part

Respondent CleanTech's motion to dismiss ICM's Fifth Amended Complaint. ICM is not petitioning this Court to reverse the district court's order, to stop the case from being transferred, to transfer the case, or anything substantive. ICM simply wants to remove a portion of the district court's order on CleanTech's motion to dismiss that states that the Kansas action should be transferred to the Southern District of New York. (pp. 17-19 of Master Dkt. No. 793) This is not the sort of relief that a writ of mandamus is intended to provide.

ICM amended its complaint **five** times (including four times in the MDL Court). CleanTech responded to each of ICM's various amended complaints by moving to dismiss the claims. At the end of each brief, CleanTech also included a single short paragraph requesting that the Kansas case be transferred to SDNY.

> If this Court is not inclined to dismiss all of ICM's claims, then, in the interest of justice, Defendants seek transfer of the ICM's claims to the Southern District of New York for all post-MDL proceedings where the NY Patent Infringement Case is pending. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.")

ICM argues that the Southern District of Indiana, as an MDL transferee court, has no authority over post-MDL proceedings and that the Southern District of Indiana further failed to consider ICM's earlier briefs. ICM never raised these arguments below, most likely because they are unpersuasive. ICM's purported extraordinary circumstances are entirely due to its own reticence. Indeed, ICM,

who is now petitioning this Court for extraordinary relief, could not even be bothered to respond to CleanTech's motion to dismiss. Instead, ICM effectively wrote "see our earlier briefs." (Master Dkt. Nos. 81 (2nd); 340 (4th); 455 (5th))

For example, in response to CleanTech's motion to dismiss ICM's Fourth Amended Complaint, ICM wrote "ICM's prior briefing in opposition to Defendants' motion to dismiss in the Kansas Action and Defendants' motion to dismiss ICM's Second Amended Complaint fully addresses Defendants' restated arguments in its most recent motion to dismiss. ICM therefore relies on its prior briefing in opposition to Defendants' motion to dismiss ICM's Fourth Amended Complaint and specifically applies the same arguments to the '516 patent." (Master Dkt. No. 340) ICM would not even attach its earlier briefs or identify them by docket number. Instead, ICM essentially told the MDL Court to comb through the voluminous filings in both the MDL and Kansas actions and find the relevant documents itself. In sum, Petitioner has had at least three opportunities in three years to raise the issue presented in this writ earlier with the MDL Court and failed to do so. The arguments raised in the petition are therefore waived.

### A.    ICM cannot show that a writ of mandamus is the only available relief

It is well established that "[m]andamus is an extraordinary remedy, available only if other relief is inadequate." *In re Whelan*, No. 97-5155, 1997 WL 404937, *1 (D.C. Cir. July 17, 1997) (citing *DRG Funding Corp. v. Secretary of Housing*

*and Urban Development*, 76 F.3d 1212, 1216 (D.C. Cir. 1996)) (emphasis added). A writ of mandamus is not the only relief available to ICM and the petition should be denied for that reason alone. For example, ICM could file a motion for reconsideration with the MDL Court. Alternatively, or in addition to a motion for reconsideration, ICM could file a motion in the District of Kansas and/or the Southern District of New York (or even the MDL Panel) at the time of transfer to oppose the transfer. In short, there are other avenues of relief available to ICM and the petition must therefore be denied.

### B.    ICM has waived its arguments by failing to raise them below

ICM waived its right to a writ by failing to raise the arguments set forth in its petition with the MDL Court despite multiple opportunities to do so. *See Ladd v. U.S.*, 713 F.3d 648, 655 (Fed. Cir. 2013) ("Because [appellants] failed to raise this argument below, we find it waived and decline to address it.").

CleanTech has repeatedly sought transfer of the Kansas action to the Southern District of New York. CleanTech sought transfer prior to the MDL proceedings and multiple times after the MDL was initiated. In the last three years, ICM had at least three opportunities to raise its concerns with the Southern District of Indiana regarding the propriety of an MDL Court considering a venue transfer motion. Instead, Petitioner remained silent, but now petitions this Court for a writ of mandamus as a vehicle to undo its own procedural failures, and to

advance arguments that could have been presented to the Southern District of Indiana prior to the District Court's decision. ICM's reticence should not be rewarded with the extraordinary relief of mandamus.

### C.    ICM does not have a clear and indisputable right to the writ

ICM cannot show that it has a clear and indisputable right to a writ of mandamus. First, CleanTech is unaware of any writ of mandamus granted merely to vacate a portion of a district court's opinion as requested by ICM. As noted above, ICM is not seeking any other relief.

Second, the Supreme Court case relied upon by ICM does not support the position that an MDL transferee court cannot transfer a case under 28 U.S.C. § 1404(a). Instead, the Supreme Court held an MDL transferee court cannot transfer a case to itself. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1988) (noting that MDL transferee courts were routinely transferring cases to themselves). Here, we do not have the *Lexecon* issue of "self-assignment" that skirts around an objective analysis of a venue transfer motion. The MDL Court performed a reasonable analysis of the "convenience factors" including (1) ICM's intention to preempt Plaintiffs' infringement suit; (2) the convenience and availability of witnesses; (3) the absence of jurisdiction over all necessary or desirable parties; and (4) the possibility of consolidation with related litigation. (Master Dkt. No. 793, p. 18). After consideration of these factors, the MDL Court

found that the Southern District of New York is a more convenient forum than Kansas.[4] (Id.)

The court in the Southern District of New York suggested the same thing several years ago when ICM requested a stay or a transfer of venue of the SDNY case to Kansas.

> There is little question that not only is the District of Kansas action related to the present action, but that it would also be convenient to the parties to the present action other than ICM to have the issues in the District of Kansas action litigated in this district. But there are other considerations.

Memorandum and Order dated 01/06/2010 in case no. 09-cv-08642-SAS (S.D.N.Y) (Dkt. No. 39, p.2) (Attached to Petition as No. 13)  Thus, while the Southern District of New York suggested that it would be a more convenient forum than Kansas (other than for ICM), the Southern District of New York deferred to the District of Kansas to make that determination.

Given that two courts independently came to the same reasonable conclusion regarding the most convenient venue, ICM cannot demonstrate that it has "a clear and indisputable right" to the writ.

---

[4] Petitioner's reliance on improper joinder and *In re EMC Corp.* 677 F.3d. 1351 (Fed. Cir. 2012) is misplaced.  (Dkt. No. 2, pp. 4, 17-18)  The MDL Court performed a transfer analysis.  (Master Dkt. No. 793)  Nowhere in the MDL Court's order did it consider joinder or "transaction-or-occurrence."  In fact, the word joinder does not appear in the MDL's Court order. (Id.)  Of course, transfer and joinder are separate civil procedure doctrines. "[T]ransfer motions are governed by regional circuit law."  *EMC*, 677 F.3d at 1354 (while joinder and motions to sever are governed by Federal Circuit law).

### D.   The issue is not ripe

Petitioner argues that an MDL Court cannot even consider a motion to transfer but does not provide any law to support such a claim (because there is none).  Rather, this Court has issued writs of mandamus when a district court has granted or denied a transfer and transfer was imminent.  *In re Regents of University of California*, 964 F.2d 1128, 1135 (Fed. Cir. 1992) (denying petition for writ of mandamus seeking order requiring Judicial Panel on Multidistrict Litigation to vacate its transfer order, because petitioner did not show it had a clear and indisputable right to relief as reasonable arguments existed for and against transfer); *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) ("As the record indicates that a rational and substantial legal argument may be made in support of the court's order denying Cordis' motion to dismiss for lack of proper venue, we decline to issue the writ.")

Here, the case has not been transferred and likely will not be for several months or more.  The MDL Court must still decide numerous motions for summary judgment on a host of issues before the cases are remanded.  Even if an MDL Court were prohibited from considering and opining on a motion to transfer (which it is not), there are no extraordinary, exigent circumstances here because transfer has not occurred and will not occur anytime soon, if at all.

## CONCLUSION

For the foregoing reasons, this Court should deny ICM's petition for mandamus and award CleanTech any relief as is just and proper.

June 13, 2013                                        Respectfully submitted,

                                                     By: /s/ Michael J. Rye
                                                     Michael J. Rye
                                                     Charles F. O'Brien
                                                     Chad A. Dever
                                                     CANTOR COLBURN LLP
                                                     20 Church Street
                                                     Hartford, CT 06103
                                                     (860) 286-2929

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 13th day of June 2013, I caused two copies of the

PRINCIPAL BRIEF FOR RESPONDENTS GS CLEANTECH CORPORATION

AND GREENSHIFT CORPORATION INC. to be served via Federal Express

overnight delivery upon the following:


The Honorable Judge Larry J. McKinney
U.S. District Court
Birch Bayh Federal Building and United States Courthouse
46 East Ohio Street, Room 105
Indianapolis, IN 46201


John M. Weyrauch, Esq.
jmweyrauch@dbclaw.com
DICKE, BILLIG & CZAJA, PLLC
Fifth Street Towers, Suite 2250
100 South Fifth Street
Minneapolis, MN 55402


/s/ Michael J. Rye
Michael J. Rye

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I certify that this brief complies with the type-volume limitation specified in Federal Rule of Appellate Procedure 32(a)(7).  According to the word processing system used to prepare this document, the document contains 2,934 words.

__/s/ Michael J. Rye_____
Michael J. Rye

June 13, 2013

**ATTACHMENTS**

| NO. | DOCUMENT DESCRIPTION |
|---|---|
| 1 | ICM's Fifth Amended Complaint (Master Dkt. No. 421) |
| 2 | ICM's Opposition to CleanTech's Motion to Dismiss (Master Dkt. No. 340) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____
                                        )
IN RE: METHOD FOR                       )
PROCESSING ETHANOL                      )        1:10-ml-02181 LJM-DML
BYPRODUCTS AND RELATED                  )
SUBSYSTEMS ('858) PATENT                )
LITIGATION,                             )
                                        )
                                        )
THIS DOCUMENT RELATES TO:               )
                                        )
1:10-cv-8000-LJM-DML                    )
_____)


PLAINTIFF ICM, INC. FIFTH AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT
JURY TRIAL REQUESTED


Plaintiff ICM, Inc. ("ICM"), for its Complaint against defendants GS CleanTech Corporation ("CleanTech") and GreenShift Corporation ("GreenShift") states and alleges as follows:

## PARTIES

1.      ICM is a Kansas Corporation having its principal place of business at 310 North First Street, Colwich, Kansas.

2.      Defendant CleanTech is a Delaware Corporation having its principal place of business at 5950 Shiloh Road East, Suite N, Alpharetta, Georgia 30005.  CleanTech is the owner of U.S. Patent Application Serial No. 11/122,859 (the "'859 patent application"), entitled "Method of Processing Ethanol Byproducts and Related Subsystems," which was filed on May 5, 2005.  The '859 patent application claims priority to U.S. Provisional Application Serial No. 60/602,050, which was filed on August 17, 2004.  The '859 patent application was published as U.S. Patent Application Publication No. 20060041152 on February 23, 2006 and subsequently

- 1 -

issued as U.S. Patent No. 7,601,858 (the "'858 Patent") on October 13, 2009. A true and correct copy of the '858 Patent is attached hereto as Exhibit A. CleanTech is also the owner of U.S. Patent Application Serial No. 11/241,231 (the "'231 patent application"), entitled "Methods of Processing Ethanol Byproducts and Related Subsystems," which published as U.S. Patent Application Publication No. 20060041153 on February 23, 2006 (the "'153 patent application publication"), and which issued as U.S. Patent No. 8,008,516 on August 30, 2011 (the "'516 Patent"). A true and correct copy of the '516 Patent is attached hereto as Exhibit B. CleanTech is also the owner of U.S. Patent No. 8,008,517, which also issued on August 39, 2011 (the "'517 Patent"). A true and correct copy of the '517 Patent is attached hereto as Exhibit D. The '516 Patent and the '517 Patent claim priority to the '859 patent application.

3.     Defendant GreenShift is a Delaware Corporation having its principal place of business at 5950 Shiloh Road East, Suite N, Alpharetta, Georgia 30005. Upon information and belief, GreenShift is a holding company and owns 100% of Defendant CleanTech.

## JURISDICTION AND VENUE

4.     This is an action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.     The Kansas U.S. District Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367.

6.     The Kansas U.S. District Court has personal jurisdiction over Defendants because they transact business in this jurisdiction.

7.     Venue lies in the Kansas U.S. District Court pursuant to 28 U.S.C. § 1391.

## PRELIMINARY ALLEGATIONS

8.      The present action involves an actual dispute between Plaintiff and Defendants over Plaintiff's right to sell and/or use equipment to practice corn oil recovery methods that are in part the subject of the claims of the '858 Patent and the '516 Patent and the '517 Patent.

9.      Plaintiff ICM designs and builds ethanol production plants for customers and promotes, sells and installs centrifuge equipment to such customers for recovering oil from corn byproducts.

10.     On or about July 15, 2009, Defendant GreenShift sent letters to certain customers of Plaintiff ICM (the "July 15 letters") falsely alleging ownership of the '859 and '231 patent applications and falsely notifying such customers of liability for installing systems and practicing corn oil recovery methods within the scope of published claims in the '859 and '231 patent applications under 35 U.S.C. § 154(d).  The July 15 letters cited portions of section 154(d), but did not include sub-section (2), which excludes liability when the claims of the issued patent are not substantially identical to the claims that appear in the patent application as it is published. The July 15 letters asserted that the activity of each ICM customer "falls squarely within the scope of the published claims of the Greenshift Applications," and that each customer is "liable under 35 U.S.C. § 154(d) once these patent applications issue."  Upon information and belief, GreenShift and/or CleanTech knew that the intended recipients of the July 15 letters were customers of ICM and that ICM had installed the centrifuge systems used in the corn oil recovery processes.  GreenShift's and/or CleanTech's false statements were intended to cause ICM's customers to cease conducting business with ICM and to begin conducting business with Greenshift and/or CleanTech.

11.     On or about August 6, 2009, ICM through its patent counsel notified Defendant GreenShift in writing that the July 15 letters to ICM customers falsely and materially misrepresented any liability under 35 U.S.C. § 154(d) by virtue of substantial amendments made to the claims of the '859 and '231 patent applications since the publication date of the '859 and '231 patent applications.

12.     Thereafter, on or about October 7, 2009, Defendant GreenShift sent additional letters to several ICM customers, including Lifeline Foods LLC (the "October 7 letters"), alleging ownership of the '859 and '231 patent applications and notifying Lifeline Foods of liability for installing systems and practicing corn oil recovery methods within the scope of published claims in the '859 and '231 patent applications under 35 U.S.C. § 154(d).  Upon information and belief, GreenShift knew that Lifeline Foods was a customer of ICM and was 49% owned by ICM.  Upon information and belief, GreenShift and/or CleanTech knew that ICM had installed the centrifuge systems in Lifeline Foods' facility.  ICM owns and operates the centrifuge systems installed in Lifeline Foods' facility to conduct the corn oil recovery processes.

13.     At the time of the July 15 letters, Defendant GreenShift knowingly misrepresented itself as the owner of the '859 and '231 patent applications.  At the time of the October 7 letters, Defendant GreenShift knowingly misrepresented itself as the owner of the '859 and '231 patent applications.

14.     At the time of the July 15 letters and the October 7 letters, the claims pending in the '859 and '231 patent applications had been materially amended such that no claim in such patent applications was substantially identical to the claims pending in such patent applications at the time of publication.  Defendant GreenShift knowingly and/or intentionally misrepresented that ICM's customers had liability under 35 U.S.C. § 154(d) in a manner calculated to interfere

with the business relationship and/or contractual relationship between ICM and its customers in regard to sales and installation of centrifuge systems for use in corn oil recovery processes.

## COUNT I

### UNFAIR COMPETITION UNDER THE LANHAM ACT (15 U.S.C. § 1125(a) AND KANSAS COMMON LAW AND TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONSHIPS

15.     The allegations of paragraphs 1-14 are incorporated by reference as if fully set forth herein.

16.     Defendant GreenShift's false and material misrepresentations to ICM's customers constitute unfair methods of competition under the Lanham Act, interference with ICM's existing and prospective business and contractual relationships.

17.      ICM has suffered injury as a result of GreenShift's unfair, deceptive and misleading acts in an amount in excess of $75,000.

### COUNT II
### FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, PATENT INVALIDITY AND UNENFORCEABILITY

18.     The allegations of paragraphs 1-17 are incorporated by reference as if fully set forth herein.

19.     Defendant CleanTech alleges that ICM and its customers infringe each independent claim of the '858 patent.

20.     None of the independent claims of the '858 patent identify a quantity of oil that must be obtained from the claimed method of each independent claim.

21.     None of the independent claims of the '858 patent identify a rate at which oil must be obtained from the claimed method of each independent claim.

22.     None of the independent claims of the '858 patent identify a commercial standard for performing the method claimed in each independent claim.

23.     Prior to sending the July 15 and October 7 letters, and prior to commencing an action for patent infringement against ICM, neither CleanTech nor GreenShift knew the amount of oil that remained in the concentrated thin stillage stream leaving the centrifuge at any of ICM's customers, including but not limited to, Cardinal Ethanol, Lincolnland Agri-Energy, Big River Resources Galva and Big River Resources West Burlington.

24.     The '858 patent does not identify a standard for determining that the concentrated thin stillage stream leaving centrifuge 14 is substantially free of oil.

25.     Defendants CleanTech and GreenShift's acts defined above constitute direct allegations of patent infringement against ICM and its customers with respect to the '858 Patent and indirect patent infringement allegations against ICM with respect to the '858 Patent by virtue of ICM's promotion, sale and installation of centrifuge systems used in a corn oil recovery process used by ICM's customers that Greenshift and CleanTech have asserted is the subject of claims of the '858 Patent.  CleanTech has stated its intentions to assert the '516 Patent against ICM.  CleanTech is also licensing the '516 Patent and the '517 Patent as part of a group of "Licensed Patent Rights," and accordingly, is holding out the '516 Patent and the '517 Patent as patents for which a license is necessary if one desires to avoid liability for patent infringement. The '517 Patent includes claims that are highly similar to those in the '858 and '516 Patents. The only difference between claim 1 of the '517 Patent and claim 8 of the '858 Patent is the moisture content percentages present in the post-evaporation syrup stream, with claim 1 of the '517 Patent claiming broader moisture content parameters that overlap with the claimed moisture content parameters in claim 8 of the '858 Patent.  CleanTech has alleged that ICM and its

customers infringe claim 8 of the '858 patent. Thus, there is an actual controversy between CleanTech and ICM as to whether ICM infringes at least claim 1 of the '517 Patent.

26. David Cantrell, a co-inventor of the '858 patent, delivered a letter dated July 31, 2003 to Agri-Energy, LLC (the "July 31, 2003 letter"). A true and correct copy of the July 31, 2003 letter is attached hereto as Exhibit C.

27. Prior to July 31, 2003, David Cantrell was in possession of test results that established that oil could be easily separated from concentrated thin stillage by mechanical processing.

28. In a Declaration to the U.S. Patent and Trademark Office dated November 5, 2010 in connection with U.S. Patent Application Serial No. 12/559,136 (now the '517 Patent) and U.S. Patent Application Serial No. 11/241,231 (now the '516 Patent), David Cantrell stated that he hand delivered the July 31, 2003 Letter to Agri-Energy representatives during a meeting on August 18, 2003. CleanTech argued to the U.S. Patent and Trademark Office that because the July 31, 2003 Letter was not delivered to Agri-Energy prior to August 17, 2003, the Letter was not material to the above-noted patent applications that resulted in the '516 and '517 Patents.

29. In a Declaration to the U.S. Patent and Trademark Office dated July 10, 2012 in connection with U.S. Patent Application Serial No. 13/107,197, David Cantrell admitted that he delivered the July 31, 2003 letter to Agri-Energy via e-mail on August 1, 2003.

30. During the prosecution of the '859 patent application, CleanTech, through its officers David Cantrell and/or David Winsness, knowingly and intentionally withheld information from the U.S. Patent and Trademark Office regarding the August 1, 2003 delivery of the July 31, 2003 letter.

31.     The withholding of the information set forth in paragraph 29 above was with the intention of deceiving the U.S. Patent and Trademark Office about a written offer by David Cantrell to Agri-Energy, to sell an oil recovery system for recovering oil from concentrated thin stillage via mechanical separation.

32.     During the prosecution of the '231 patent application, CleanTech, through its officers David Cantrell and/or David Winsness, knowingly and intentionally withheld information from the U.S. Patent and Trademark Office regarding the August 1, 2003 delivery of the July 31, 2003 letter.  Rather, David Cantrell provided a Declaration to the U.S. Patent and Trademark Office contending that the July 31, 2003 letter was hand delivered to Agri-Energy on August 18, 2003.

33.     The withholding of the information set forth in paragraph 29 above was with the intention of deceiving the U.S. Patent and Trademark Office about a written offer by David Cantrell to Agri-Energy, to sell an oil recovery system for recovering oil from concentrated thin stillage via mechanical separation more than one year prior to the August 17, 2004 filing date of U.S. Provisional Application Serial No. 60/602,050.

34.     Each of the claims of the '858 Patent, the '516 Patent and the '517 Patent is invalid and/or unenforceable for failure to satisfy the provisions of at least 35 U.S.C. §§ 101, 102, 103, 112 and 37 C.F.R. § 1.56.

35.     Plaintiff ICM is entitled to a declaration of non-infringement of the '858 Patent, the '516 Patent, and the '517 Patent.

## REQUEST FOR JURY TRIAL

36.     Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ICM prays that:

A.    The Court declare that GreenShift's acts constitute unfair methods of competition, interference with ICM's existing and prospective business and contractual relationships and award ICM its damages in an amount to be determined;

B.    The Court declare invalid each of the claims of the '858 Patent, the '516 Patent and the '517 Patent;

C.    The Court declare that the '858 Patent, the '516 Patent, and the '517 Patent is unenforceable by virtue of CleanTech's inequitable conduct;

D.    The Court declare that each of the '858 Patent, the '516 Patent, and the '517 Patent is not infringed by ICM and/or its customers;

E.    The Court issue an injunction against GreenShift, CleanTech and anyone acting in privity or concert with them from charging infringement or instituting any legal action for infringement of the '858 Patent, the '516 Patent, and the '517 Patent against ICM or anyone acting in privity with ICM, including the successors, assigns, agents, suppliers, manufacturers, contractors and customers of ICM;

F.    ICM be awarded its costs in this action;

G.    ICM be awarded attorneys' fees in this action pursuant to 35 U.S.C. § 285; and

H.    ICM be awarded such other relief as the Court deems just and equitable.

DICKE, BILLIG & CZAJA, PLLC

Dated: July 30, 2012

By: /John M. Weyrauch
John M. Weyrauch (MN221,879)
Paul P. Kempf (MN239,215)
100 South Fifth Street, Suite 2250
Minneapolis, MN 55402
Telephone: (612) 767-2512
Facsimile: (612) 573-2005
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 30, 2012, a copy of the foregoing Plaintiff ICM, Inc. Fifth Amended Complaint for Declaratory Judgment was filed electronically.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


s/John M. Weyrauch

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____ )
                                                                    )
IN RE: METHOD FOR                                      )
PROCESSING ETHANOL                               )          1:10-ml-02181 LJM-DML
BYPRODUCTS AND RELATED                       )
SUBSYSTEMS ('858) PATENT                       )
LITIGATION,                                                   )
                                                                    )
THIS DOCUMENT RELATES TO:                  )
                                                                    )
1:10-cv-8000-LJM-DML                              )
_____ )

## BRIEF OF ICM, INC. IN OPPOSITION TO DEFENDANTS GS CLEANTECH CORPORATION AND GREENSHIFT CORPORATION'S MOTION TO DISMISS ICM'S FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6) OR, ALTERNATIVELY, TO TRANSFER

## ARGUMENT

Defendants' motion to dismiss ICM's Fourth Amended Complaint is substantially identical to Defendant's motion to dismiss ICM's Second Amended Complaint, which itself was a duplication of Defendants' same motion in the Kansas Action. Defendants' motion merely acknowledges that the claims of ICM's Fourth Amended Complaint were amended to include Defendants' new '516 patent. ICM's prior briefing in opposition to Defendants' motion to dismiss in the Kansas Action and Defendants' motion to dismiss ICM's Second Amended Complaint fully addresses Defendants' restated arguments in its most recent motion to dismiss. ICM therefore relies on its prior briefing in opposition to Defendants' motion to dismiss ICM's Fourth Amended Complaint and specifically applies the same arguments to the '516 patent.

Dated: May 7, 2012                      s/John M. Weyrauch
                                        John M. Weyrauch (MN221,879)
                                        Paul P. Kempf (MN239,215)
                                        DICKE, BILLIG & CZAJA, PLLC
                                        100 South Fifth Street, Suite 2250
                                        Minneapolis, MN 55402
                                        Telephone: (612) 767-2511
                                        Facsimile: (612) 573-2005
                                        jmweyrauch@dbclaw.com
                                        pkempf@dbclaw.com

                                        ATTORNEYS FOR DEFENDANT ICM, INC.

## <u>CERTIFICATE OF SERVICE</u>

The foregoing was filed electronically this 7th day of May, 2012. Notice of this filing will be sent to all attorneys of record in this case, by operation of the Court's Electronic Filing System.

<u>s/John M. Weyrauch</u>